125 P.3d 530

**In the Consolidated Matter of the Termination of the Parental Rights of John Doe and Jane Doe.**

**John ROE and Jane Roe, Petitioners–Respondents,**

v.

**John DOE, Respondent–Appellant.**

**No. 31356.**

Supreme Court of Idaho,
Idaho Falls, September 2005 Term.

Nov. 23, 2005.

176

Radakovich Law Office, Lewiston, for appellant. Danny J. Radakovich argued.

Jordan P. Smith, Salmon, for respondents.

TROUT, Justice.

John Doe (Doe) appeals from a magistrate court decision terminating his parental rights to his minor child, Baby Doe, which was affirmed on appeal to the district court. We hold that there is substantial and competent evidence to affirm the magistrate's decision to terminate Doe's parental rights on the grounds of neglect.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Doe is the father of Baby Doe and son of the Respondents, John Roe and Jane Roe (the Roes), Baby Doe's grandparents. Soon after Baby Doe was born out-of-wedlock, his mother left the area and has not been in contact since. After birth, Baby Doe lived sporadically with his father until he was approximately eighteen months old, at which point his father voluntarily gave him to the Roes to care for him. Baby Doe remained with his grandparents for the next three and one-half years until Doe showed up at the Roe's home and took Baby Doe back to Boise to live with him. After Baby Doe had lived with his father for only two months, the Roes received some anonymous telephone calls concerning Baby Doe's welfare. On July 4, 1998, after becoming concerned that Baby Doe was living in deplorable conditions, the Roes drove to Boise to pick him up and take him back to their ranch in the Pahsimeroi Valley.

In September 1998, the Roes filed a Petition for Guardianship. Based upon the findings that Baby Doe had lived the majority of his life with the Roes, had maintained little contact with his father and while in his father's care had been subjected to mental and physical abuse, guardianship was awarded to the Roes. For the next three years Baby Doe lived with his grandparents, with sporadic visitation and telephone calls from his father.

Then, in March 2002, presumably out of concern for the stability and security of their grandchild's life, the Roes petitioned to terminate Doe's parental rights and to adopt Baby Doe. The matter went to trial and at the conclusion of the trial, the magistrate judge entered detailed findings of fact in which he outlined the first five and one-half years of Baby Doe's life and the minimal contact Baby Doe had had with his father from the time he was eighteen months old.

Ultimately, the magistrate judge terminated Doe's parental rights on grounds of neglect, abandonment, abuse and a finding that termination would be in both the child's and the father's best interests. The judge also entered an order permitting the Roes to adopt Baby Doe. Doe appealed to the district court, which affirmed the trial court's decision to terminate the father's parental rights. The district court found there was substantial and competent evidence to support the findings of neglect and abandonment, but not as to the grounds of abuse or that termination was in the father's best interests. Doe appeals to this Court the determinations regarding neglect and abandonment. The district judge's decisions regarding abuse and the father's best interests as grounds for termination have not been raised on appeal and are not before us.

## II.

## STANDARD OF REVIEW

 When reviewing a decision rendered by the district court in its appellate capacity, this Court considers the record before the magistrate court independently of the district court's determination, giving due regard to the district court's analysis. *Roe Family Servs. v. Doe*, 139 Idaho 930, 934, 88

P.3d 749, 753 (2004); I.R.C.P. 83(a). "In an action to terminate parental rights, 'where a clear and convincing standard has been noted explicitly and applied by the trial court, an appellate court will not disturb the trial court's findings unless they are not supported by substantial and competent evidence.'" *Roe Family Servs.*, 139 Idaho at 934, 88 P.3d at 753. "Findings are competent, so long as they are supported by substantial, albeit possibly, conflicting, evidence." *Roberts v. Roberts*, 138 Idaho 401, 405, 64 P.3d 327, 331 (2003) (citing *Lickley v. Max Herbold, Inc.*, 133 Idaho 209, 211, 984 P.2d 697, 699 (1999)). Only clearly erroneous findings are overturned, which means a reasonable person would not have relied on them in concluding as the fact finder did. *Opportunity, L.L.C. v. Ossewarde*, 136 Idaho 602, 605, 38 P.3d 1258, 1261 (2002). "[T]his Court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated." *Doe I v. Doe*, 138 Idaho 893, 900, 71 P.3d 1040, 1047 (2003) (quotations omitted).

## III.

## ANALYSIS

### A. Termination of Parental Rights

#### 1. Judicial Bias

 First, Doe argues he should be entitled to a new trial because the magistrate judge's decision was, in part, a consequence of improper bias. In his findings, the magistrate judge made some specific observations about the father's inappropriate responses and facial expressions throughout the trial, particularly at times when opposing witnesses were testifying. However, to warrant the disqualification of a judge for alleged bias, the bias must either be based on information "other than what the judge learned from his participation in the case" or be "of such a nature and character that it would make it impossible for the litigant to get a fair trial." *Desfosses v. Desfosses*, 120 Idaho 27, 29, 813 P.2d 366, 368 (Ct.App.1991) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778,

793 (1966)). Doe's argument that the trial court was biased rests on the judge's findings as to the father's demeanor *during* trial. The trial court's findings of fact contain observations about Doe's inappropriate reactions to the Roes' testimony or his evident pleasure at their discomfort or pain. Nothing in the trial court's findings or in Doe's arguments demonstrates any extra-judicial influences or that the judge based his decision on anything other than what he learned during trial. Further, a review of the transcript reveals there was no unfairness in the proceedings, nor that a fair trial was impossible. In fact, the magistrate judge was even-handed in cautioning both parties at various times to keep their testimony free of sarcasm or anger.

■ One of the primary roles of a trial judge is to assess the credibility of the witnesses:

> The finder of fact has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties. In a parental-termination case, this is immensely important. A cold record of the trial does not tell the whole story. An independent review by [this Court] could not take into account the trial court's superior view of the entire situation.

*Doe v. Roe*, 133 Idaho 805, 809, 992 P.2d 1205, 1209 (1999) (quotations omitted); *See also Doe v. Dep't of Health and Welfare, Human Servs. Div.*, 141 Idaho 511, 515, 112 P.3d 799, 803 (2005) ("regarding the findings of fact, it is the trial judge who is charged with determining the credibility of the witnesses, not the Court on appeal"). Here, the judge was appropriately remarking on the father's demeanor, which then supported the judge's determination that the father's testimony lacked credibility.

## 2. Grounds for Termination

■ Neglect is a ground for parental termination and was defined by the statute in effect at the time of this proceeding as "a situation in which the child lacks parental care necessary for his [or her] health, morals and well-being." I.C. § 16–2005(b).[1] The question of neglect is one of fact. *Thompson v. Thompson*, 110 Idaho 93, 94, 714 P.2d 62, 63 (Ct.App.1986). Doe asserts the magistrate judge's finding of neglect is not supported by substantial and competent evidence.

■ Doe argues that the magistrate judge erred in considering as a part of the findings, conduct that occurred prior to the Roes' appointment as guardians, asserting that this evidence had already been considered as a basis for the guardianship and should not be used now to justify termination. However, the magistrate judge made clear in the findings that while conduct prior to the guardianship could support termination, he was deliberately not considering it and was basing his finding of neglect exclusively on Doe's conduct since the guardianship order. Moreover, past character evidence may be relevant in determining future behavior. *In Interest of Dayley*, 112 Idaho 522, 525, 733 P.2d 743, 746 (1987). No good reason has been presented here to require the trial court to limit consideration of relevant evidence about Doe's behavior and treatment of his son.

Doe also argues that after the guardianship was ordered in 1998, his ability to parent Baby Doe was severely limited by the Roes who made it difficult for him to see his son. However, it was uncontroverted that every time Doe attempted to see Baby Doe, the Roes accommodated his request. Doe was also granted visitation in the guardianship order and could have used the legal system to enforce his visitation rights, had he truly been concerned about his inability to see Baby Doe.

■ Finally, Doe argues there is no substantial and competent evidence to support the finding of neglect. On the contrary, there is compelling evidence in this case, as found by the magistrate judge, that Doe has neglected his child. In his detailed

---

1. On July 1, 2005, I.C. § 16–2005(b) was amended so that it no longer provides a definition of neglect.

findings, the magistrate judge found that Doe's visitation with his child was sporadic and infrequent. Over a three and one-half year period, the father visited with Baby Doe approximately ten times for a total of nineteen and one-half hours and had approximately ten to thirteen telephone conversations of relatively short duration. There were also four separate occasions when he didn't visit Baby Doe at all for over six months.

Doe also failed to provide for his child's health insurance or medical costs. While there was disputed evidence regarding his payment of any support toward the child, the judge properly considered the testimony and concluded there was no credible evidence that Doe had paid anything toward the support of Baby Doe. In addition, the trial court noted that Doe had an extensive criminal record, history of marijuana usage and alcohol abuse, and an inability to maintain consistent employment or a stable lifestyle. Doe admitted that his criminal record did not promote Baby Doe's morals and well-being. The trial court also pointed out evidence supporting the court's conclusion that Doe was dishonest.

■■■■ All of the evidence discussed above, together with other evidence discussed by the trial court in its findings, provides a substantial and competent basis for the trial court's conclusion that Doe has failed to provide the parental care necessary for Baby Doe's health, morals and well-being. We affirm the trial court's determination to terminate Doe's parental rights on the grounds of neglect. Statutory grounds for termination of parental rights are independent, and if any one or more of the grounds for termination are found, termination may be granted. *Matter of Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). Because this Court affirms the finding of neglect, it is unnecessary to consider abandonment.

### 3. Best Interests of the Child

■■■■ "When a judge finds a statutory ground, such as neglect, he or she must then decide if termination of parental rights is in the best interests of the child[ ]." *Doe v. Dep't of Health and Welfare, Human Servs. Div.*, 141 Idaho at 515, 112 P.3d at 803 (2005).

The magistrate judge clearly outlined why it was in the best interests of Baby Doe to have his father's parental rights terminated. The Roes have been Baby Doe's primary caregivers through most of his lifetime. They have provided a warm, loving and consistent home, in an area where many members of the extended family are an integral part of Baby Doe's life. The Roes have provided security, love and stability in the child's life. There was evidence that Baby Doe is afraid of Doe's anger and that the child desires to remain with the Roes. There is substantial and competent evidence to support the trial court's finding that termination is in the best interests of Baby Doe.

### B. The Constitutionality of Idaho Code § 16–2005(a)

Doe requests that, if this Court orders a new trial, we also consider the constitutionality of I.C. 16–2005(a), for guidance below. Because we are not remanding the case for a new trial, it is not necessary to address this issue.

### C. Attorney's fees

■■■■ The Roes request attorney's fees and costs on appeal under I.A.R. 40 and I.A.R. 41. However, they have not cited any statutory basis for their request for attorney's fees, nor have they presented any argument in support. "In order to be awarded attorney fees, a party must actually assert the statute or other basis for the award." *KEB Enterprises, L.P. v. Smedley*, 140 Idaho 746, 754, 101 P.3d 690, 698 (2004). Respondents' request for attorney's fees on appeal is therefore denied.

### IV.

### CONCLUSION

This Court affirms the magistrate judge's decision terminating Doe's parental rights on the grounds of neglect. We award costs on appeal to Respondents.

Chief Justice SCHROEDER and Justices EISMANN, BURDICK and JONES concur.